and final delivery schedules within 90 days of receipt. This provision is inconsistent with Articles IV.B and C which allow DOE 3 months and 45 days to approve or disapprove delivery commitment schedules and final delivery schedules, respectively. In any event, the provisions of Article IV.B and C make Article V.B.1 redundant. Article V.B.1 should therefore be deleted.

10. Article V.B.2 should require DOE to provide Purchaser with the necessary information, procedures, specifications needed for Purchaser to meet its responsibilities under Article V.A.2(c) to maintain, protect and preserve shipping casks while they are at Purchaser's site. The information should be provided sufficiently far in advance so that Purchaser will be adequately prepared. The provision should also recognize DOE's responsibility for normal cask maintenance and repair. Article V.B.2 should acknowledge that more than one cask may be involved. Finally, the cask(s) to be provided must be compatible with the transportation capabilities to and at the site, as well as suitable for use at the site. The following revised Article V.B.2 meets these objectives:

13. DOE's obligation to provide Purchaser with program cost projection information (Art. V.B.5) should specifically include a requirement that DOE inform Purchaser at the earliest possible date of a proposed increase in the fee. Utilities will need as much advance notice as possible in order to assure appropriate rate treatment through their public utility commissions. An appropriate additional sentence should be added to Article V.B.5:

> "DOE shall promptly notify Purchaser when it has information suggesting that an adjustment to the fee established hereunder may be appropriate, and shall afford Purchaser the opportunity to comment on a suggested fee adjustment before transmitting a proposed fee adjustment to Congress pursuant to Section 302(a)(4) of the Act. DOE shall promptly notify Purchaser of a proposed adjustment to the fee."

14. Under Article V.B.6, DOE issues an annual priority ranking of SNF/HLW eligible for receipt at the DOE facility. We believe that the 1991 date for the first of these reports does not provide utilities with sufficient advance notice so that they can adequately plan their SNF storage needs. DOE will be developing information on schedules, capacities, receiving rates, etc. in connection with its development of the mission plan required by section 301 of the Nuclear Waste Policy Act. DOE will also

be receiving information on actual and future SNF discharges beginning in October, 1983. DOE should therefore provide an annual report, setting out its schedules, projected receiving rates, and projected allocations for all purchasers, starting at about the time that DOE submits the mission plan to Congress (i.e., June 7, 1984). The report should cover at least 10 years of repository operation. Of course, the report would be based upon the best information then available to DOE. Consistent with our comments on Article VI.B.3, the provision would reflect an allocation system partially based on age and partially on inventory share. Article V.B.6 should be changed accordingly:

> "Beginning not later than July 1, 1984, DOE shall issue an annual capacity allocation report. The report shall set forth the projected annual receiving capacity for the DOE facility or facilities and the annual acceptance allocation for each party to a DOE contract for the disposal of SNF and/or HLW. The report shall provide such capacity and allocation information, to the extent available, for ten fiscal years following the projected commencement of operation of the initial DOE facility."

15. If Purchaser has failed fuel which requires encapsulation prior to loading in the shipping cask, DOE should provide the cannisters, to assure that they

schedules exchanged pursuant to Article IV.E."

7. Article VI.B.3(b) gives a priority to SNF/HLW from permanently shutdown reactors. As explained above, we do not support this priority system and recommend that it be deleted.

ARTICLE VII - TITLE

1. The first sentence refers to "Title to all SNF and/or HLW accepted by DOE for disposal" passing to DOE "upon acceptance". The phrase "accepted by DOE for disposal" is surplusage and should be deleted.

2. For clarity, the second sentence should refer to responsibility for the material shifting upon "passage of title" instead of upon DOE's "assuming title."

3. In the event that DOE subsequently chooses to use or process the SNF and/or HLW for purposes other than disposal, an appropriate credit should be provided. This credit should flow to the Nuclear Waste Fund, since the selection of a particular purchaser's SNF/HLW is likely to be essentially arbitrary. Crediting the Fund will spread the benefit to all purchasers. This credit can be accomplished by adding a proviso at the end of the section:

APPENDIX B

1. To be consistent with Article IV.B., the second sentence in Appendix B should be changed to read: "This Delivery Commitment Schedule shall be submitted by Purchaser to DOE for approval not later than sixty-three (63) months prior to the estimated date of delivery."
2. "Reactor Name" should be changed to "Reactor/Facility Name." The delivery point may be a reprocessing plant, storage facility, etc.
3. "Type reactor -- PWR/BWR" should be deleted. The designation of the reactor type is not necessarily indicative of the type of fuel assemblies which may be shipped from a reactor's storage pool, since there may have been a transshipment of PWR fuel to a BWR Plant or vice versa.
4. We presume the "Shipping Lot No." will be assigned by DOE. A parenthetical statement to that effect might be added.
5. "Discharge Date" should be "Range of Discharge Dates (Earliest To Latest)."
6. "Metric Tons Uranium" should be modified by the addition of "(Initial)." This is to clarify that the quantity of uranium to be reported is the quantity at the time the fuel assembly was initially loaded upon fabrication.

7. After "Number of Assemblies" there should be three blanks -- one designated "BWR", one designated "PWR", and one designated "Other". More than one type of assembly could be shipped from the same reactor or facility.

8. "Proposed Shipping Mode" should include "(Rail/Truck/Barge)."

9. The penultimate paragraph is unnecessary. Article V.A.2.(b) requires that Appendix F -- "Detailed Description of Purchaser's Fuel" -- be submitted for each shipping lot sixty (60) days prior to scheduled transportation.

10. The final paragraph should be deleted and replaced by the following statement: "Purchaser hereby certifies that the Spent Nuclear Fuel to be delivered pursuant to this Delivery Commitment Schedule has been discharged from a Civilian Nuclear Power Reactor and that Purchaser has the legal right to deliver such Spent Nuclear Fuel to DOE for Disposal." Proof of ownership could be difficult to produce in some cases, would unnecessarily increases the paperwork required, may be subject to dispute, or may change between the time the Delivery Commitment Schedule is executed and actual delivery occurs. DOE is required, in any event, to take all SNF and HLW derived from civilian nuclear power reactors (as that

term is defined in Article I(3)). The proposed certification assures DOE that Purchaser has the legal right to deliver the SNF to DOE and that the SNF is eligible for delivery to DOE pursuant to the Contract.

11. "Approved for DOE" should be changed to "Approved by DOE."

APPENDIX C

1. The information to be provided in Appendix C should be submitted on a separate form for each delivery site designated by Purchaser.

2. "Reactor Name" should be changed to "Reactor/Facility Name." See Comment 2 with respect to Appendix B above.

3. Delete the entry "Type Reactor -- PWR/BWR". See Comment 3 with respect to Appendix B above.

4. We presume the "Shipping Lot No." will be assigned by DOE. A parenthetical statement to that effect might be added.

5. "Discharge Date" should be "Range of Discharge Dates (Earliest To Latest)."

6. "Metric Tons Uranium" should be modified by the addition of "(Initial)." See Comment 6 with respect to Appendix B above.

SAMPLE

APPENDIX 'B'

DELIVERY COMMITMENT SCHEDULE

In accordance with the contract for disposal of spent nuclear fuel and/or high-level radioactive waste between Purchaser and DOE, the following delivery commitment schedule is submitted by Purchaser to DOE. This delivery commitment schedule shall be submitted by Purchaser to DOE for approval not later than sixty-three (63) months prior to the estimated date of delivery.

Purchaser ____________________

Contract Number ____________ Date ____ / ____ / ____
Mo Day Yr

Reactor/Facility Name ____________________

Location:

Street ____________________

City ____________________

County/State ____________ / ____________

Zip Code ____________

Shipping Lot Number (Assigned by DOE) ________ Type Cask Required: ________

DOE Assigned Delivery Commitment Year ________

Proposed Shipping Mode: Truck ☐ Rail ☐ Barge ☐

Range of Discharge Date(s) (Earliest to Latest) ____ / ____ / ____ To ____ / ____ / ____
Mo. Day Yr. Mo. Day Yr.

Metric Tons Uranium (Initial) ________ Number of Assemblies:

BWR ________

PWR ________

Other ________

Purchaser hereby certifies that the Spent Nuclear Fuel to be delivered pursuant to this Delivery Commitment Schedule has been discharged from a Civilian Nuclear Power Reactor and that Purchaser has the legal right to deliver such Spent Nuclear Fuel to DOE for Disposal.

By Purchaser ____________ Approved by DOE ____________

Title ____________ Contracting Officer ____________

Date ____ / ____ / ____ Date ____ / ____ / ____
Mo Day Yr Mo Day Yr

SAMPLE

APPENDIX 'C'

FINAL DELIVERY SCHEDULE

(To be submitted to DOE by Purchaser for each designated Delivery site not later than twelve (12) months prior to estimated date of first delivery.)

Purchaser: ______________________________

Contract Number ____________ Date ____ / ____ / ____
Mo Day Yr

Reactor/Facility Name ______________________________

Location:

Street ______________________________

City ______________________________

County/State ______________ / ______________

Zip Code

Shipping Lot Number ________
(Assigned by DOE)

Type(s) of Cask(s) to be Used: ________ ________

Shipping Mode: Truck ☐ Rail ☐ Barge ☐

# Assemblies per cask ____

Metric Tons Uranium - Initial ______

Range of Discharge Date(s) (Earliest to Latest) ____ / ____ / ____ To ____ / ____ / ____
Mo Day Yr Mo Day Yr
(From approved commitment schedule)

Number of Assemblies
BWR ______
PWR ______
Other ______

Purchasers Delivery Estimate First ____ / ____ / ____ Last ____ / ____ / ____
Mo Day Yr Mo Day Yr

Purchaser hereby certifies that the Spent Nuclear Fuel to be delivered pursuant to this Final Delivery Schedule has been discharged from a Civilian Nuclear Power Reactor and Purchaser has the legal right to deliver such Spent Nuclear Fuel to DOE for Disposal.

To confirm acceptability of delivery date.

Note:

Purchaser Contact ____________ Title ____________ Phone ____________

DOE Contact ____________ Title ____________ Phone ____________

By Purchaser ____________ Approved by DOE ____________

Title ____________ Contracting Officer ____________

Date ____ / ____ / ____ Date ____ / ____ / ____
Mo Day Yr Mo Day Yr

provided should be simply the total nuclear kilowatt hours generated and sold during the assigned three month period. In all cases, that number will not simply be read from a continuous meter, but may require calculations.

2. In the "Instructions for Completing DOE Remittance Advice," Section II, the first sentence should read: "Based on inventory of SNF and/or HLW from SNF discharged from a civilian nuclear power reactor prior to April 7, 1983, times the kilogram fee."

3. "Instructions for Completing DOE Remittance Advice," Section III, the first sentence should read: "Based upon electricity generated and sold on or after April 7, 1983 times the current fee of one mil per kilowatt hour." The second sentence should read: "Schedules should be attached specifying the net amount of kilowatt hours generated by each nuclear unit during the assigned period."

PENDIX H

1. The suggested Disputes Clause in Appendix H to the draft DOE Disposal Contract appears generally to be patterned after the old Disputes Clause in uranium enrichment contracts, developed prior to the Contract Disputes Act of 1978. DOE has subsequently determined that the enrichment contracts are governed by

the Contract Disputes Act. However, it is not clear that the statutory jurisdiction of the Contract Disputes Act would include the DOE Disposal Contract, which provides for services by the Government only. Nonetheless the disputes mechanism set forth in the Contract Disputes Act provides a model for the Disputes Clause that we recommend.

2. Our recommended Disputes Clause (attached hereto) provides: (1) In the event of a dispute or claim arising under or related to the Contract, the Purchaser would file a claim with the Contracting Officer. (2) The Contracting Officer must decide the claim in writing within 60 days. (3) The Purchaser could appeal the Contracing Officer's decision either to the DOE Board of Contract Appeals (within 90 days), or the Claims Court (within 1 year). (5) Arbitration would be available if both parties agree. (6) Pending final decision of a claim, DOE and the Purchaser would proceed diligently with performance of those aspects of the Contract not in dispute.

3. We propose deleting the certification of claims requirement for claims in excess of $50,000. This provision was designed for contracts where a contractor may be claiming money is owed under a supply contract. Here claims are more likely to be for schedule adjustments or regarding delivery

commitments rather than claims for money. The certification requirement is not necessary to protect the government from frivolous claims.

4. An arbitration provision was added as a disputes resolution mechanism where both parties agree and where consistent with Government Contracts Law. Both parties may prefer an expert in the field to arbitrate certain highly technical matters. The "Umpire" provision in uranium enrichment contracts is an example of such an arbitration mechanism.

5. The disputes clause in Appendix H to the draft DOE Disposal Contract provides that "In connection with any appeal proceeding under this clause, the Purchaser shall proceed diligently with the performance of the Contract and, in accordance with the Contracting Officer's decision." The meaning of this provision is not clear. It may mean that during the pendency of an appeal, Purchaser shall continue to perform under the Contract. If this is its meaning, the clause is one-sided. An appropriate substitute found in Paragraph D of our proposed Disputes Clause would be: "Pending final decision of a claim hereunder, Purchaser and DOE shall proceed diligently with the performance of those aspects of the contract not in dispute."

RECOMMENDED DISPUTES CLAUSE

DISPUTES

A. Except as otherwise provided in this Contract, all disputes or claims arising under or relating to this Contract, including the performance or nonperformance thereunder, shall be resolved in accordance with this clause.

B. (1) As used herein, "claim" means a written demand or assertion by one of the parties seeking, as a matter of right, the payment of money, adjustment, or interpretation of contract terms, or other relief, arising under or relating to this Contract, including the performance or nonperformance by either party hereunder.

(2) A claim by the Purchaser shall be made in writing and be submitted to the Contracting Officer for decision. A claim by the Government against the Purchaser shall be subject to an initial decision by the Contracting Officer.

(3) The Contracting Officer must decide the claim in writing within sixty (60) days of his receipt of the claim from the Purchaser.

(4) The Contracting Officer's decision shall be final unless the Purchaser files an appeal or initiates legal action pursuant to Paragraph C herein.

C. An appeal of the Contracting Officer's decision may be taken by the Purchaser as follows:

(1) Upon agreement of the two parties and where authorized by law, the appeal of a Contracting Officer's decision may be submitted to binding arbitration. Such an appeal shall be initiated within ninety (90) days of Purchaser's receipt of the Contracting Officer's decision by notice to the Contracting Officer. The parties shall attempt to designate as arbitrator a person qualified by training and experience to pass upon the matter in dispute. If the parties cannot agree upon an arbitrator, each party shall designate one arbitrator and the two arbitrators so designated shall select a third arbitrator. The arbitration shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association. Arbitration proceedings shall be held in Washington, D.C., and judgment upon any arbitration award may be entered in any court having jurisdiction thereof in the District of Columbia or the State of ___________, the parties hereto consenting to the jurisdiction of such courts for this purpose, or any other court having jurisdiction thereof. The decision of the arbitrator(s) shall be in writing. The parties shall share the procedural costs of arbitration equally unless the arbitrator(s) decides otherwise. Each party shall pay its own attorney fees and costs incurred in connection with the arbitration. This agreement to arbitrate shall be specifically enforceable.

(2) The Purchaser may elect to appeal to the DOE Board of Contract Appeals ("Board"). The Purchaser shall take an appeal to the Board by a written notice of appeal addressed to the Board and the Contracting Officer within ninety (90) days of Purchaser's receipt of the Contracting Officer's decision. The appeal shall be governed by the DOE rules applicable to contract claims not subject to the Contract Disputes Act of 1978 (P.L. 95-563). The decision of the Board shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In any such appeal, the Purchaser shall be afforded an opportunity to be heard and to offer evidence in support of its appeal.

(3) The Purchaser may elect to appeal to the United States Claims Court by filing suit with the Claims Court within one year of Purchaser's receipt of the Contracting Officer's decision.

D. Pending final decision of a claim hereunder, Purchaser and DOE shall proceed diligently with the performance of those aspects of the Contract not in dispute.