# ATTACHMENT

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| ENTERGY GULF STATES, INC.,<br>SYSTEMS FUELS, INC.,<br>DETROIT EDISON COMPANY, | ) | |
| Plaintiffs, | ) | No. 03-2625C<br>No. 03-2621C<br>No. 02-926C<br>(Judge Williams) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DECLARATION OF HAROLD D. LESTER, JR.**

I, Harold D. Lester, Jr., state as follows:

1. I am an Assistant Director in the Commercial Litigation Branch of the Civil Division, United States Department of Justice. I have been assigned as counsel in this proceeding and am competent to testify to the matters stated herein, which are based upon my personal knowledge and personal involvement since 1999 in the spent nuclear fuel ("SNF") cases pending before this Court. I provide this declaration to the Court pursuant to Rule 56(f) of the Rules of the Court of Federal Claims.

2. Before the plaintiff in this case filed its complaint, several other cases alleging breaches of the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste" ("Standard Contract"), the terms of which are published at 10 C.F.R. § 961.11, were filed. The Court established a coordinated discovery proceeding through which the plaintiffs in pending cases and the Government were to take their discovery regarding "schedule" issues, which included issues relating to the rate and schedule for the acceptance of SNF pursuant to the Standard Contract. As part of those proceedings, the Government, on or about November 5, 2003, served subpoenas upon contract holders that had not yet filed suit

against the Government, seeking limited third-party document production requests. Our office's records indicate that subpoenas were served upon Detroit Edison Company and Entergy. We obtained very limited responses to those subpoenas. Other than that limited discovery, there has been no formal discovery of the plaintiff in this case.

3. One of the issues raised in the plaintiff's motion for summary judgment regarding liability is its contention that the Government partially breached its Standard Contract, and should be found liable to the plaintiff here for that partial breach, by failing to begin SNF acceptance from other contract holders by January 31, 1998. The plaintiff also suggests that the Standard Contract does not contain any mechanism for ensuring that, if the Department of Energy ("DOE") travels to a site to accept SNF, the contract holder will actually have to deliver SNF to DOE and that the Standard Contract's provisions dealing with delivery commitment schedules ("DCSs") and final delivery schedules ("FDSs") are not binding upon the parties. The plaintiff also suggests that the reason it declined to submit DCSs to DOE for approval was because such an act would have been futile.

4. Our research has indicated that, in interpreting the requirements of a contract, the behavior of parties before the "advent of controversy" is often more revealing than the contract language alone. Omni Corp. v. United States, 41 Fed. Cl. 585, 591 (1998). It has further indicated that "[o]ne may not ignore the interpretation and performance of a contract, whether termed 'mistake' or not, before a dispute arises." Alvin Ltd. v. United States Postal Serv., 816 F.2d 1562, 1566 (Fed. Cir. 1987). "A principle of contract interpretation is that the contract must be interpreted in accordance with the parties' understanding as shown by their conduct before the

controversy." Julius Goldman's Egg City v. United States, 697 F.2d 1051, 1058 (Fed. Cir. 1983), cert. denied, 464 U.S. 814 (1983).

5. If given the opportunity, we would conduct our own discovery into (1) the plaintiff's historical understanding of the purpose of the delivery commitment schedules and its understanding of the meaning of the Standard Contract's acceptance schedule provisions, both at the time of contract formation and subsequently; (2) the bases upon which the plaintiff's understanding of the contract provisions rests; and (3) the actual reasons that the plaintiff declined to submit delivery commitment schedules to DOE.

5. Our discovery into these matters will include (1) a limited number of document requests and interrogatories; (2) proffers of affidavits, if appropriate after investigation; and (3) depositions of the individuals involved in the plaintiff's contract formation and contract performance.

I declare under penalty of perjury that the foregoing is true and correct. Executed that 29th day of October, 2004.

Harold D. Lester, Jr.
Assistant Director
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
1100 L Street, N.W.
Washington, D.C. 20530