**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on February 16, 2006)

| | |
|---|---|
| **THE DETROIT EDISON COMPANY,** | |
| Plaintiff, | |
| v. | No. 02-926C (Judge Williams) |
| **THE UNITED STATES,** | |
| Defendant. | |

**PLAINTIFF DETROIT EDISON'S SUPPLEMENTAL REPLY BRIEF IN RESPONSE TO THE COURT'S ORDER OF DECEMBER 20, 2005**

Pursuant to the Court's order of December 20, 2005, plaintiff The Detroit Edison Company ("Detroit Edison") submits its supplemental reply brief.

In Detroit Edison's opening brief (dated January 27, 2006), we summarized and then discussed in detail the three overarching principles established by the cases that the Court asked the parties to address in this supplemental round of briefing. The government's simultaneous opening brief provides no basis for questioning either those principles or our conclusion that they control the outcome here and should result in a decision granting partial summary judgment to Detroit Edison on the government's liability under Count I (breach of contract) of Detroit Edison's complaint and on a reasonable rate of spent nuclear fuel ("SNF") acceptance.

Indeed, as more fully described below, the government:

(1) fails to distinguish this case from *System Fuels*, which held that the government is **collaterally estopped** from arguing that DOE breached any later than January 31, 1998;

(2) concedes that the Federal Circuit's decision in *Indiana Michigan II* permits an SNF plaintiff to recover **pre-breach**

**mitigation expenses** beginning at least as early as 1994, *i.e.*, four years *before* the contractual start date for SNF acceptance of January 31, 1998 (though Detroit Edison is not claiming damages before 1998); and

(3) persists, in contravention of its "unconditional obligation" under the D.C. Circuit's decision in *Indiana Michigan I* and its subsequent writ of mandamus in *Northern States I* to begin accepting SNF by January 31, 1998, in relying on the **discredited DCS process** as its chief defense both to liability and to damages, particularly the timing of damages.

## ARGUMENT

### A. The Government Does Not Dispute This Court's Jurisdiction

The government opens its brief with a frolic and detour concerning the appeal in *PSEG Nuclear, LLC v. United States*, No. 01-115C (Fed. Cl.) (Sypolt, J.), another SNF case in which a judge of this Court, *sua sponte*, held that the judicial review provision of the NWPA (42 U.S.C. § 10139) displaces this Court's jurisdiction under the Tucker Act to hear SNF cases. As the government notes, neither the plaintiffs there nor the government disputed the Court's jurisdiction. The same is true here: neither Detroit Edison nor the government disputes the Court's jurisdiction over this SNF case. *See* Gov't Supp. Br. at 3 ("neither party has raised a challenge to this Court's jurisdiction in this case"). That should be the end of the story.

If more were needed, though, the Federal Circuit itself has already upheld this Court's jurisdiction over the SNF cases. As Judge Lettow noted in *Boston Edison*, "[t]he D.C. Circuit and the Federal Circuit both concur that jurisdiction in this court is appropriate over disputes arising under the Standard Contract." *Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 179 (2005); *see also id.* at 177 & 178 n.14 (discussing *Indiana Michigan Power Co. v. Dep't of Energy*, 88 F.3d 1273 (D.C. Cir. 1996) ("*Indiana Michigan I*"); *Northern States Power Co. v. Dep't of Energy*, 128 F.3d 754, 759 (D.C. Cir. 1997) ("*Northern States I*"); *Maine Yankee*

*Atomic Power Co. v. United States,* 225 F.3d 1336 (Fed. Cir. 2000) (affirming grant of summary judgment for utilities that DOE breached Standard Contracts by failing to begin disposal services by January 31, 1998); and *Northern States Power Co. v. United States,* 224 F.3d 1361, 1367 (Fed. Cir. 2000) ("*Northern States III*") (reversing dismissal of breach suit).

As the Court may have surmised, the real dispute here is not about the jurisdiction of this Court; rather, it is about the jurisdiction of the D.C. Circuit in *Indiana Michigan I,* where the court held that DOE had an "unconditional obligation" under the NWPA to begin accepting SNF by January 31, 1998, and in *Northern States I,* where the court enforced that decision against DOE by issuing a writ of mandamus. The government's purpose here becomes evident in its later discussion of Judge Lettow's jurisdictional analysis in *Boston Edison,* which the government incorrectly reads as challenging the jurisdiction of the D.C. Circuit in *Indiana Michigan I* and *Northern States I.* Contrary to the government's suggestion, however, the jurisdiction of the D.C. Circuit in those cases is irrelevant to the issues posed in the *PSEG* appeal. Moreover, Judge Lettow does not seem to share the government's reading of his jurisdictional analysis, as we discuss below.

**B. As in *System Fuels*, the Government Is Collaterally Estopped Here from Contesting Its Liability for Breach**

In *System Fuels, Inc. v. United States,* 65 Fed. Cl. 163 (2005) ("*System Fuels*"), Judge Lettow held that the government was collaterally estopped by the D.C. Circuit's decision in *Northern States I* from contesting that the breach occurred any later than January 31, 1998. The government nonetheless mounts several challenges to the applicability of collateral estoppel here. None has merit.

*First,* although acknowledging that Detroit Edison, like System Fuels, was a petitioner in *Northern States I* (Gov't Supp. Br. at 9 n.2 ("Detroit was a party to the *Northern States*

proceeding")), the government nonetheless argues that collateral estoppel should not apply because the D.C. Circuit did not consider the government's DCS-based defense to liability – that is, that the DCSs, not the statutory deadline, establish the date on which performance is due with respect to any particular utility and, hence, the date on which any breach may first occur as to that utility.

As Judge Lettow noted in *Systems Fuels I*, however, the D.C. Circuit did not make any such distinction in *Northern States I*. *See* 65 Fed. Cl. at 176. Unlike the government, Judge Lettow also discloses the reason: "the government failed to raise this contention both in the case where plaintiff [System Fuels] was a petitioner and in the follow-up to that case before the Federal Circuit." *Id.* at 176 n.16 (citing *Northern States III*, 224 F.3d 1361 (Fed. Cir. 2000), and *Northern States I*, 128 F.3d at 754 (D.C. Cir. 1997)). Hence, as in *System Fuels*, the government's DCS argument here is foreclosed by the D.C. Circuit's determination that the NWPA imposed an unconditional obligation to begin acceptance by January 31, 1998. *See System Fuels*, 65 Fed. Cl. at 176 ("the government is collaterally estopped from arguing that the partial breach took place after January 31, 1998").

*Second*, relying on Judge Lettow's above-referenced jurisdictional analysis in *Boston Edison*, the government mounts, or at least invites the Court to mount, a collateral attack on the jurisdiction of the D.C. Circuit in *Northern States I*. *See* Gov't Supp. Br. at 12-14. Any such attack would be misguided, because it disregards the fact that Judge Lettow himself has repeatedly relied on the D.C. Circuit's decisions in *Indiana Michigan I* and *Northern States I*. *See System Fuels*, 65 Fed. Cl. at 168 n.7, 175-76 (relying on *Boston Edison* and D.C. Circuit decisions); *Entergy Nuclear Indian Point 2 v. United States*, 64 Fed. Cl. 515, 518, 524 n.14 (2005) ("*ENIP2*") (same); *Entergy Nuclear Generation Co. v. United States*, 64 Fed. Cl. 336,

343 n.8, 345 (2005) (same). Indeed, in *Boston Edison* itself, Judge Lettow stood ready and willing to apply collateral estoppel against the government if the plaintiff demonstrated that it, too, was a petitioner in *Northern States I*. *See Boston Edison*, 64 Fed. Cl. at 185 ("The court rejects Boston Edison's collateral estoppel claim *unless* it shows in future proceedings that it was a party in a case where the date of breach was a critical and necessary element of the judgment.") (emphasis added).[1]

*Third*, the government argues that collateral estoppel should not apply because Detroit Edison has not come forth with evidence that it incurred damages before the date on which it filed its complaint. This contention is answered by the damages declaration that Detroit Edison submitted with its opening brief, which demonstrates that DOE's delay in commencing performance caused Detroit Edison to incur mitigation expenses at least as early as 2001, well before it filed its complaint. *See* Colonnello Decl. ¶¶ 6-9 (Exh. A to Pltf's 1/27/06 Supp. Br.).[2]

Accordingly, the government has shown no reason why the Court should not reach the same result here as in *System Fuels*.

**C. Detroit Edison May Recover Its Mitigation Expenses to Date as Well as Any that It Incurs Before the Date of Trial**

As the government appropriately concedes, under the Federal Circuit's decision in *Indiana Michigan II*, 422 F.3d 1369, 1374-75 (Fed. Cir. 2005), nuclear utilities were obligated to begin mitigating once they knew that DOE's performance would not be forthcoming, and the utilities knew that with reasonable certainty long before the statutory deadline of January 31, 1998. *See* Gov't Supp. Br. at 6-8 (section II.B). Accordingly, all of the utilities are entitled to

[1] Moreover, the government's current position regarding the precedential value of *Northern States I* directly contradicts the government's position before this Court and the Federal Circuit in *Northern States III*, where the government argued that *Northern States I* is both proper and preclusive. *See Northern States III*, 224 F.3d at 1366.

[2] At trial, Detroit Edison may present evidence of mitigation damages incurred before 2001.

recover pre-breach mitigation expenses based on DOE's prospective inability to perform, regardless of the fact that DOE was not obligated to begin to perform until January 1998 and regardless of the fact that DOE would not necessarily have picked up a particular utility's SNF at that time. In fact, however, Detroit Edison is claiming in its motion only damages incurred *after* 1998, when DOE breached its unconditional obligation to begin accepting SNF. Hence, Detroit Edison is unquestionably entitled to recover all of these damages upon presenting proper proof at trial.

Further citing *Indiana Michigan II*, the government questions Detroit Edison's entitlement to recover "future" damages, by which the government apparently means any damages incurred after the date of Detroit Edison's complaint, even if they are incurred before trial. *See* Gov't Supp. Br. at 5-6. Although the Court need not reach this issue to decide the pending motions, we would disagree with the government's overly technical reading of that aspect of the Federal Circuit's decision. Read practically in light of the court's concern about speculative damages, the basic thrust of the decision is that partial breach plaintiffs are precluded from recovering only those damages that they have not yet actually incurred, as opposed to damages that they have actually incurred in reasonably certain amounts as of the time of trial. We would also disagree with the government to the extent that it is suggesting that the Federal Circuit's decision somehow derogates from plaintiffs' rights under RCFC 15 to seek leave to file amended complaints prior to trial. On these points, see *Tennessee Valley Authority v. United States*, 2006 WL 242671, at *7 (Fed. Cl. Jan. 31, 2006) ("*TVA II*") (Lettow, J.), where the Court treated post-complaint, pre-trial damages as "past" damages or, in the alternative, deemed the complaint amended to conform to the damages evidence presented at trial, which included post-complaint, pre-trial damages. For purposes of the pending motions, however, Detroit

Edison's liability motion satisfies even the government's narrow reading of *Indiana Michigan II,* in that Detroit Edison has presented evidence of mitigation damages incurred well before the date of its complaint. *See* Colonnello Decl. ¶¶ 6-9.

**D. The DCS Process Is Irrelevant to Determining Liability, Damages, or Even an SNF Acceptance Rate**

Despite its "unconditional obligation" to begin accepting SNF in 1998, the government persists in relying on the DCS process as its key defense, both as to liability and damages. *See* Gov't Supp. Br. at 14-22. In support of this now-you-see-it/now-you-don't scheduling process, the government rehearses its entire argument yet again – without ever mentioning, of course, that DOE unilaterally discontinued the process in or around early 1997, when it found it inconvenient for its litigation purposes, and unilaterally discontinued it again in 2004, following a short-lived unilateral resumption. For a more reliable recitation of the sorry facts of the DCS process, *see TVA II*, 2006 WL 242671, at *2-*5 (Lettow, J.) (describing the history of the DCS process and how DOE "short-circuited" that process).

Moreover, the government proves too much by showing that DOE sought to avoid pinning itself down to any schedule by refusing to incorporate an express acceptance rate or schedule in the Standard Contract. DOE's attempt to do so, and the nuclear utilities' resulting concern, do not necessarily mean that DOE succeeded in this ploy. As we have already shown, the acceptance rate and schedule are omitted but essential terms of the Standard Contract. *See* Pltf's Opp. (Dec. 19, 2002) at 40-74. Consequently, the Court must read a reasonable acceptance rate and schedule into the contract, not only to effectuate the reasonable expectations of the SNF plaintiffs but also to save the contract from being illusory, a result that Congress could not have intended in enacting the NWPA. *See id.; see also* Pltf's Reply (June 10, 2004) at 14-33; Pltf's Mot. for Leave (Jan. 27, 2005) at 1-4; *see also ENIP2*, 64 Fed. Cl. at 525 (Lettow, J.) (Standard

Contract would be illusory if DOE, through the DCS process, had unfettered discretion to determine its obligations under the contract).

In support of its DCS argument, the government presents a series of cases purportedly validating this Court's acceptance of the DCS process. None of those cases does any such thing. First up is the decision in *Power Authority of New York v. United States*, No. 00-703C, 2004 WL 3461071, at *1 (Fed. Cl. Sept. 30, 2004) (unpublished) (Damich, C.J.). To the extent that this one-page, summary decision precludes the recovery of pre-breach damages, it has since been overruled by *Indiana Michigan II*, 422 F.3d at 1374-75. In any event, it is irrelevant here because Detroit Edison is claiming only post-breach damages.

The government next marches out *Boston Edison* as a case in which Judge Lettow, in the government's view, denied summary judgment based in part on issues of fact concerning the DCS scheduling process. That reads too much into the decision, however, given that Judge Lettow has elsewhere characterized the government's DCS-based schedule arguments as "dubious" in light of the decisions of the D.C. and Federal Circuits that "'the NWPA imposes an unconditional obligation on [DOE] to begin disposal of the SNF by January 31, 1998.'" *Entergy Nuclear Generation Co. v. United States*, 64 Fed. Cl. 336, 343 n.8 (2005) (quoting *Northern States I,* 128 F.3d at 761 (D.C. Cir. 1997); *Maine Yankee Atomic Power Co. v. United States,* 225 F.3d 1336, 1343 (Fed. Cir. 2000); and *Indiana Michigan I*, 88 F.3d at 1275-76 (D.C. Cir. 1996)). Not to mention that Judge Lettow has also taken pains to point out that other judges of this Court have rejected the government's DCS-based arguments. *See Entergy Nuclear Generation*, 64 Fed. Cl. at 343 n.8 ("the government's argument based on DCSs has not been accepted in other decisions by this court") (citing *Sacramento Mun. Util. Dist. v. United States*, 63 Fed. Cl. 495, 503-05 (2005); and *Commonwealth Edison Co. v. United States*, 56 Fed. Cl. 652, 655-56

(2003)); *see also ENIP2*, 64 Fed. Cl. at 524 (referring to the "questionable premise that previously filed DCSs could determine the date of the breach" and again noting that other judges of the Court had not accepted the government's arguments that the DCS process governs liability and recovery of damages). As the government notes, it disagrees with those decisions, but that is hardly conclusive. *See* Gov't Supp. Br. at 15.

Next the government trots out *Florida Power & Light Co. v. United States*, 64 Fed. Cl. 37, 48 n.12, *interlocutory appeal pending sub. nom. PSEG Nuclear, LLC v. United States*, No. 05-5162 (Fed. Cir. Filed Aug. 5, 2005). But any discussion of the acceptance rate by Judge Sypolt is at best *obiter dicta*, given that she held that this Court had no jurisdiction to hear the case.

Finally, the government cites *Tennessee Valley Authority v. United States*, 60 Fed. Cl. 665 (2004) (Lettow, J.) ("*TVA I*"), as a decision in which the Court supposedly applied the DCS process "in the manner that the Government has established is appropriate." This is literally correct, but misleading. Although the government acknowledges that the Court relied on the DCS process only for the purposes of that particular case, it failed to disclose that it did so because TVA did not oppose the resulting acceptance rate and schedule in light of the unique circumstances that TVA's damages were the same even under that acceptance rate and schedule. *See TVA II*, 2006 WL 242671, at *10 n.13 (Lettow, J.) ("TVA accepted for purposes of this litigation the quantities of SNF allotted by DOE for disposal during the ten-year period from 1998-2007 when DOE expected to be using an MRS that was never built.") (citing *TVA I*, 60 Fed. Cl. at 671); *see also TVA I*, 60 Fed. Cl. at 670-71 & 671 n.7. Still, Judge Lettow rejected the government's attempted use of the DCS process to excuse its non-performance and denied the government's acceptance rate motion on that basis. *See TVA I*, 60 Fed. Cl. at 672-73.

In short, the DCS process is simply not defensible under any of the cited decisions of this or any other Court.

**E. The Government Is Not Entitled to Summary Judgment on Detroit Edison's Claim for Breach of the Covenant of Good Faith and Fair Dealing**

In support of its motion for summary judgment on Count II of Detroit Edison's complaint (breach of the duty of good faith and fair dealing), the government attempts to distinguish on procedural grounds the Court's decision in *Boston Edison*, in which it denied the government's motion to dismiss, or for summary judgment on, a similar claim there. In particular, the government argues that the Court denied the motion only because of the more relaxed standard applicable to motions to dismiss. In fact, however, the Court expressly decided the motion as one for summary judgment. *See Boston Edison*, 64 Fed. Cl. at 187 ("The government's motion for *summary judgment* on Boston Edison's claim for breach of the implied covenant of good faith and fair dealing is denied.") (emphasis added).

As the Court noted there, "[o]ne obligation imposed by the covenant [of good faith and fair dealing] is 'not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contract.'" *Id.* (quoting *Centex Corp. & CTX Holding Co. v. United States*, 395 F.3d 1283, 1304 (Fed. Cir. 2005)). The purpose of this obligation is to prevent the government from doing exactly what DOE has done to all of the SNF plaintiffs – that is, to prevent the government "from targeting its contracting partners' reasonable expectations." *Id.* (citing *Yankee Atomic Elec. Co. v. United States*, 112 F.3d 1569, 1575 (Fed. Cir. 1997)). The relevant facts of DOE's abysmal failure to take the steps necessary to meet the SNF plaintiffs' reasonable expectations, not to mention DOE's manipulation of the DCS process for litigation purposes, are amply documented in the reported SNF decisions to date, including not only

*Boston Edison* but also *TVA II*. As in *Boston Edison*, the Court should deny the government's motion for summary judgment on this count of the complaint.

## CONCLUSION

Because the government is collaterally estopped from denying its breach of Detroit Edison's contract, because Detroit Edison is entitled to recover the resulting mitigation damages, and because the discredited DCS process is inconsistent with appellate precedents as a basis for establishing DOE's contractual obligations or liability for damages, Detroit Edison respectfully requests that the Court grant Detroit Edison's motions for partial summary judgment on liability and on the acceptance rate and that the Court deny the government's motions for summary judgment on Counts I and II of the complaint.

Dated: February 16, 2006

Respectfully submitted,

s/Alex D. Tomaszczuk by s/Daniel S. Herzfeld
Alex D. Tomaszczuk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7940
Fax: (703) 770-7901

*Counsel of Record for Plaintiff*
*The Detroit Edison Company*

*Of Counsel:*
Jay E. Silberg
Walter F. Zenner
Daniel S. Herzfeld
Jack Y. Chu
PILLSBURY WINTHROP
SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
Tel: (202) 663-8000
Fax: (202) 663-8007