**No. 02-926C**
**(Judge Williams)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**DETROIT EDISON COMPANY,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

**DEFENDANT'S MOTION TO DEFER THE COURT'S CONSIDERATION OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY**

---

**JEFFREY S. BUCHOLTZ**
**Acting Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**HAROLD D. LESTER, JR.**
**Assistant Director**

**PATRICK B. BRYAN**
**Trial Attorney**
**Commercial Litigation Branch**
**Civil Division**
**Department of Justice**
**Attn: Classification Unit**
**8th Floor**
**1100 L Street, N.W.**
**Washington, D.C. 20530**
**Tele: (202) 616-8299**
**Fax: (202) 305-2503**

**Attorneys for Defendant**

**OF COUNSEL:**

**JANE K. TAYLOR**
**Office of General Counsel**
**U.S. Department of Energy**
**1000 Independence Avenue, S.W.**
**Washington, D.C. 20585**

**April 18, 2008**

TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

I. THE COURT SHOULD EXERCISE ITS BROAD DISCRETION TO MANAGE THE DISPOSITION OF THE CASES ON ITS DOCKET BY DEFERRING FURTHER CONSIDERATION OF DETROIT EDISON'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY PENDING RESOLUTION OF THE *NEBRASKA PUBLIC POWER* APPEAL . . . . . . . . . . . . . . . . . 8

A. The Standard For Considering Whether To Defer Consideration Of A Motion . . 8

B. Deferral Of Detroit Edison's Liability Motion Is Appropriate At This Time . . . 10

1. This Matter Is Closely Related To The *Nebraska Public Power* Appeal Now Before The Federal Circuit . . . . . . . . . . . . . . . . . . . . . . . . . 10

2. Absent A Deferral, The Government Will Incur Substantial Hardship . . 11

3. The Requested Deferral Is Of A Reasonable Duration . . . . . . . . . . . . . . 11

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# TABLE OF AUTHORITIES

CASES PAGE(S)

Amado v. Microsoft Corp.,
517 F.3d 1353 (Fed. Cir. 2008) . . . . . . . . 9

C3, Inc. v. United States, 5 Cl. Ct. 659 (1984) . . . . . . . . 9

Cherokee Nation of Oklahoma v. United States,
124 F.3d 1413 (Fed. Cir. 1997) . . . . . . . . 8

Coast Fed. Bank, FSB v. United States,
49 Fed. Cl. 11 (2001) . . . . . . . . 8

Indiana Michigan Power Co. v. Department of Energy,
88 F.3d 1272 (D.C. Cir. 1996) . . . . . . . . 3

Landis v. North American Co.,
299 U.S. 248 (1936) . . . . . . . . 8, 9

Maine Yankee Atomic Power Co. v United States,
225 F.3d 1336 (Fed. Cir. 2000) . . . . . . . . 6

Metadure Corp. v. United States,
6 Cl. Ct. 61, 67 (1984) . . . . . . . . 9

Nebraska Public Power District v. United States,
73 Fed. Cl. 650 (2006), appeal pending,
No. 2007-5083 (Fed. Cir.) . . . . . . . . 7

Nebraska Public Power District v. United States,
No. 2007-5083 (Fed. Cir.) . . . . . . . . passim

New York Power Authority v. United States,
42 Fed. Cl. 795 (1999) . . . . . . . . 8, 9

Northern States Power Co. v. United States,
224 F.3d 1361 (Fed. Cir. 2000) . . . . . . . . 6

Northern States Power Co. v. United States Dep't of Energy,
128 F.3d 754 (D.C. Cir. 1997), cert. denied,
525 U.S. 1015 & 1016 (1998) . . . . . . . . 4

Northern States Power Co. v. United States Dep't of Energy,
No. 97-1064, 98-1069, 98-1070, 97-1065, 97-1370, 97-1398,
1998 WL 276581 (D.C. Cir. May 5, 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATUTES AND REGULATIONS

10 C.F.R. § 961.11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

42 U.S.C. §10101-10270 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

MISCELLANEOUS

Restatement (Second) of Contracts § 211 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| DETROIT EDISON COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 02-926C |
| v. | ) | (Judge Williams) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DEFER THE COURT'S CONSIDERATION OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY

Defendant, the United States, respectfully requests that the Court defer consideration of the "Motion For Summary Judgment On Liability" that the plaintiff, Detroit Edison Company ("Detroit Edison"), filed on May 28, 2004, pending the issuance of the United States Court of Appeals for the Federal Circuit's decision in Nebraska Public Power District v. United States, No. 2007-5083 (Fed. Cir.). As discussed below, because the Federal Circuit's decision will resolve (or, at a minimum, address critical issues related to) the central question disputed by the parties in Detroit Edison's May 28, 2004 motion for summary judgment, in the interests of judicial economy, the Court should exercise its broad discretion to manage the disposition of this case by staying consideration of Detroit Edison's summary motion pending the outcome of the Nebraska Public Power appeal.

BACKGROUND

In 1983, Congress enacted the Nuclear Waste Policy Act of 1982 ("NWPA"), 42 U.S.C. § 10101-10270. One of the purposes of the NWPA was "to establish the Federal responsibility, and a definite Federal policy, for the disposal" of high-level radioactive waste ("HLW") and spent nuclear fuel (collectively, "SNF"). Id. at § 10101-10270. Pursuant to Section 302(a) of the NWPA, 42 U.S.C. § 10222(a), the Secretary of the Energy was "authorized to enter into

contracts with any person who generates or holds title to [SNF] of domestic origin for the acceptance of title, subsequent transportation, and disposal of such [SNF]." 42 U.S.C. § 10222(a)(1). The Department of Energy ("DOE") implemented the requirements of section 302(a) of the NWPA by promulgating, through notice-and-comment rulemaking in the Federal Register, the Standard Contract now published at 10 C.F.R. § 961.11. The Standard Contract required DOE to begin "[t]he services to be provided by DOE" under the Standard Contract "not later than January 31, 1998." 10 C.F.R. Part 961, Art. II. On or about June 27, 1983, Detroit Edison executed its Standard Contract with DOE. Because DOE was unable to begin performance by the January 31, 1998 deadline, the Standard Contract holders, including Detroit Edison, collectively have filed 71 separate cases to date in this Court seeking recovery from the United States in connection with DOE's delay in SNF acceptance.

A particular Standard Contract provision, the "Unavoidable Delays" clause, contained within Article IX of the Standard Contract, excuses DOE from liability for a delay in the scheduled delivery, acceptance, or transport of SNF arising out of causes beyond the "reasonable control of . . . [the Department of Energy ('DOE')]," including "acts of Government in either its sovereign or contractual capacity," as follows:

> Unavoidable Delays by Purchaser or DOE
>
> Neither the Government nor Purchaser shall be liable under this contract for damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform. In the event circumstances beyond the reasonable control of the Purchaser or DOE – such as acts of God, or of the public enemy, acts of Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes and unusually severe weather – cause delay in scheduled delivery, acceptance or transport of SNF and/or HLW, the party experiencing the delay will notify the other

> party as soon as possible after such delay is ascertained and the parties will readjust their schedules, as appropriate, to accommodate such delay.

10 C.F.R. § 961.11, Art. IX(A) (emphasis added).

Prior to the commencement of this and the other SNF cases in this Court, there was a series of cases decided by the United States Court of Appeals for the District of Columbia Circuit, pursuant to the "Judicial Review" provision of the NWPA, 42 U.S.C. § 10139 (1994). Part of that history involves the decision of the United States Court of Appeals for the District of Columbia Circuit in Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272 (D.C. Cir. 1996). In that case, the D.C. Circuit held "that section 302(a)(5)(B) [of the NWPA] create[d] an obligation in DOE, reciprocal to the utilities' obligation to pay, to start disposing of the SNF no later than January 31, 1998." Id. at 1274.

Subsequently, a number of other nuclear utilities and state agencies filed petitions for writs of mandamus in the D.C. Circuit that, among other things, sought to compel DOE to begin accepting SNF by January 31, 1998. While those petitions were pending, and in response to comments received by contract holders regarding the anticipated delay in building a permanent geological repository or interim storage facility, DOE determined that, pursuant to Unavoidable Delays clause, contained in Article IX of the Standard Contract, DOE was "not obligated to provide a financial remedy for the delay" because the delay was unavoidable because of events that were beyond DOE's control and informed the nuclear utilities of that determination by letter. See Northern States Power Co. v. United States Dep't of Energy, 128 F.3d 754, 757 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 & 1016 (1998) ("Northern States I"). The petitioners

informed the D.C. Circuit of this determination by DOE, and, in its decision on the petitions, the court considered the letter and granted the petitions for mandamus in part by ordering DOE to

> proceed with contractual remedies in a manner consistent with the NWPA's command that it undertake an unconditional obligation to begin disposal of SNF by January 31, 1998. More specifically, we preclude DOE from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim.
>
> This necessarily means, of course, that DOE not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of "acts of Government in either its sovereign or contractual capacity."

Northern States I, 128 F.3d at 761. Consequently, the D.C. Circuit issued a writ of mandamus "precluding DOE from excusing its own delay [in the acceptance of contract holders' SNF] on the grounds that it has not yet prepared a permanent repository or interim storage facility." Id. at 761. In addition, the D.C. Circuit stated that it "retain[ed] jurisdiction over this case pending compliance with the mandate issued herewith." Id.

DOE filed a petition for rehearing, contending that the D.C. Circuit lacked jurisdiction to determine the applicability of the "Unavoidable Delays" provision of the Standard Contract. DOE explained in the rehearing petition that questions concerning the construction and administration of the Standard Contract are entrusted to the Court of Federal Claims. The D.C. Circuit, however, denied DOE's motion for rehearing, concluding that it was not adjudicating a contract dispute but that, instead, it was merely enforcing a statutory duty:

> [t]he DOE . . . suggest[s] that this Court has erroneously designated itself as the proper forum for adjudication of disputes arising under the Standard Contract. As the above should make clear, we did not; we merely prohibited the DOE from implementing an interpretation that would place it in

> violation of its duty under the NWPA to assume an unconditional obligation to begin disposal by January 31, 1998. The statutory duty to include an unconditional obligation in the contract is independent of any rights under the contract. The Tucker Act does not prevent us from exercising jurisdiction over an action to enforce compliance with the NWPA.

Northern States Power Co. v. United States Dep't of Energy, No. 97-1064, 98-1069, 98-1070, 97-1065, 97-1370, 97-1398, 1998 WL 276581 (D.C. Cir. May 5, 1998).

The Solicitor General has asserted on more than one occasion his belief that the D.C. Circuit lacked jurisdiction to decide contractual issues relating to the terms of the Standard Contract. Specifically, although the D.C. Circuit believed that it was merely enforcing the statutory requirement in the NWPA that DOE begin SNF acceptance by January 31, 1998, section 302 of Title III of the NWPA does not mandate that DOE begin SNF acceptance on January 31, 1998. Instead, it provides that DOE include language in contracts which provides that, in return for the payment of fees, DOE, "beginning not later than January 31, 1998, will dispose" of SNF. 42 U.S.C. § 10222(a)(5). Further, the statute did not express any limitations upon DOE's ability to implement provisions that would identify a remedy, or preclude a monetary remedy, if that statutory date was not met. In 1983, in accordance with the statute, DOE included a provision in the Standard Contract responsive to that statutory language. To the extent that interested parties believed that DOE had not complied with the statutory requirement, they had 180 days from the final action of the Secretary to challenge it. 42 U.S.C. § 10139(c). That time passed without challenge by any interested parties, including Detroit Edison. Accordingly, as we have argued to the Federal Circuit, the D.C. Circuit's action in 1997 exceeded its jurisdiction, as the Government had not waived its sovereign immunity to allow for

the issuance of the writ. Nevertheless, to date, the writ of mandamus that the D.C. Circuit issued in 1997 has not been lifted by that court.[1]

As the Court is aware, on May 28, 2004, Detroit Edison filed a motion for summary judgment upon the issue of the Government's liability for contract damages arising from DOE's delay in SNF acceptance. The Government filed its opposition to Detroit Edison's summary judgment motion on July 28, 2004, along with a cross-motion for summary judgment upon Detroit Edison's breach of contract and good faith and fair dealing claims.[2] While the

---

[1] In Maine Yankee Atomic Power Co. v United States, 225 F.3d 1336, 1341 (Fed. Cir. 2000), the Federal Circuit examined whether the Government could rely upon Article IX.B of the Standard Contract, the avoidable delays clause, to avoid liability for failing to begin acceptance of SNF in 1998. The Federal Circuit concluded that the avoidable delays clause only applied to delays that occurred after performance began, and thus could not excuse DOE from liability for delay in the commencement of SNF acceptance. Id. The same day, the Federal Circuit issued its decision in Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000) ("Northern States II"), in which we had advanced precisely the same avoidable delay position as in Maine Yankee. In rejecting the Government's argument, the Federal Circuit expressly referred to its holding in Maine Yankee concerning the avoidable delays clause, but inadvertently used the words "unavoidable delays clause" rather than the avoidable delays clause when referencing the issue that Maine Yankee had decided. Id. at 1367 (emphasis added). Consequently, neither the decision in Maine Yankee nor in Northern States II addresses the argument that, pursuant to Article IX.A of the Standard Contract, the Government is excused from liability for delays in meeting its contractual obligations because of events beyond the control of DOE.

[2] Detroit Edison filed its reply in support of its motion for summary judgement, along with its response in opposition to our cross-motion for summary judgment upon Detroit Edison's breach of contract and good faith and fair dealing claims, on September 9, 2004. The United States filed a reply in support of the Government's cross-motion for summary judgment on October 29, 2004. Thereafter, in response to the Court's December 20, 2005 order requesting supplemental briefing, the parties filed simultaneous briefing to discuss the effect of certain recently-issued Federal Circuit and Court of Federal Claims decisions upon the parties' pending motions. Subsequently, on May 6, 2006, the Court stayed all proceedings in this matter pending the issuance of the Federal Circuit's decision in PSEG Nuclear, LLC v. United States, which addressed the question of the Court's jurisdiction to hear cases arising under the Standard Contract. Order, at 1 (Fed. Cl. May 9, 2006). Following the Federal Circuit's decision in PSEG, Detroit Edison jointly requested with defendant that the Court continue to stay all proceedings in

Government presented legal arguments in its briefing that demonstrate the invalidity of Detroit Edison's claim for contract damages, because of the D.C. Circuit's writ of mandamus and our continuing obligation to comply with that court's orders, we were precluded in our briefing from arguing that the "Unavoidable Delays" clause excuses DOE's delays arising from the absence of a facility at which DOE may dispose of the plaintiffs' SNF, subject to the risk of the imposition of contempt sanctions by the D.C. Circuit.

However, following the conclusion of briefing concerning Detroit Edison's motion for summary judgment, and during the period when this case was stayed at the request of the parties, this Court subsequently ruled in Nebraska Public Power District v. United States, 73 Fed. Cl. 650, 674 (2006), appeal pending, No. 2007-5083 (Fed. Cir.), that the writ of mandamus preventing the Government from relying upon the "Unavoidable Delays" clause of the Standard Contract was void ab initio because the court that issued it, the United States Court of Appeals for the District of Columbia Circuit, lacked jurisdiction to do so and because the Government had not waived its sovereign immunity relating to the matter identified in the writ. The Federal Circuit granted the plaintiff's petition in Nebraska Public Power for permission to appeal that interlocutory decision, the briefing in that case has been completed, and oral argument was held on December 3, 2007. Because the appeal was argued over four months ago and we expect that a decision from the Federal Circuit will issue soon, judicial efficiency militates towards staying

---

this matter until after the resolution of certain cases pending in the Court and in the Federal Circuit, including, among others, Nebraska Public Power. See Joint Motion To Continue Stay, dated February 1, 2007, at 4; see also Joint Status Report, dated June 29, 2007, at 2 (requesting continuance of stay). Notwithstanding the pendency of Nebraska Public Power and other significant SNF cases on appeal before the Federal Circuit, Detroit Edison recently changed course and petitioned the Court to lift the stay in this case. By order dated April 4, 2008, the Court granted Detroit Edison's request to lift the previously-imposed stay of all proceedings.

the Court's resolution of Detroit Edison's motion for summary judgment on liability pending the issuance of the Federal Circuit's ruling in Nebraska Public Power.

ARGUMENT

I. THE COURT SHOULD EXERCISE ITS BROAD DISCRETION TO MANAGE THE DISPOSITION OF THE CASES ON ITS DOCKET BY DEFERRING FURTHER CONSIDERATION OF DETROIT EDISON'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY PENDING RESOLUTION OF THE *NEBRASKA PUBLIC POWER* APPEAL

A. The Standard For Considering Whether To Defer Consideration Of A Motion

This Court "has broad discretion to stay proceedings before it in the interests of economy of time and effort for itself, for counsel, and for litigants." Coast Fed. Bank, FSB v. United States, 49 Fed. Cl. 11, 15 (2001) (citing Landis v. North American Co., 299 U.S. 248, 254 (1936)); see Cherokee Nation of Oklahoma v. United States, 124 F.3d 1413, 1416 (Fed. Cir. 1997) ("When and how to stay proceedings is within the sound discretion of the trial court."). The Court's power to stay derives from "the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigatns." New York Power Authority v. United States, 42 Fed. Cl. 795, 799 (1999) (citation omitted). In addressing a request for a stay, the Court should "maximize the effective utilization of judicial resources and to minimize the possibility of conflicts between different courts." Id. Accordingly, a stay is appropriate if it would "avoid conflicting opinions and promote judicial efficiency, while at the same time it does not unduly prejudice a party's interest." Id. In the context of deciding a motion to stay all proceedings pending the resolution of a separate proceeding, the Court in the past has applied a three-part test. A stay is generally proper if (1) the cases involve "substantially similar" or "related issues;" (2) the requesting party will suffer

hardship or inequity if required to go forward; and (3) the requested stay is not of immoderate duration. C3, Inc. v. United States, 5 Cl. Ct. 659, 660 (1984) (citing Landis, 299 U.S. at 255).

Here, we are not asking that the Court stay this case in its entirety. Instead, we are seeking a much less extensive request. We are only seeking to defer this Court's consideration of the pending liability motion to await the Federal Circuit's guidance in an appeal that could affect that liability ruling by expanding the defenses that the Government can raise in this case. Beyond its authority to stay a case in its entirety, the Court has great discretion to manage its docket, Metadure Corp. v. United States, 6 Cl. Ct. 61, 67 (1984), which includes the ability to defer decision upon certain motions until an appropriate point in the litigation. See Amado v. Microsoft Corp., 517 F.3d 1353, 1358 (Fed. Cir. 2008) (district courts "are afforded broad discretion to control and manage their dockets, including the authority to decide the order in which they hear and decide issues pending before them"). Because the requested deferral of this Court's resolution of Detroit Edison's liability motion is less extensive in scope than a complete stay of proceedings, principles of judicial economy militate even more strongly in favor of granting the Government's modest requested relief. Nevertheless, even applying the factors that the Court considers in considering whether to stay a case in its entirety, those factors are satisfied here and favor deferral of the resolution of Detroit Edison's liability motion.

B. Deferral Of Detroit Edison's Liability Motion Is Appropriate At This Time

1. This Matter Is Closely Related To The *Nebraska Public Power* Appeal Now Before The Federal Circuit

There can be no serious dispute that the central question presented in Detroit Edison's motion for summary judgment is closely related to issue raised in the Nebraska Public Power appeal currently before the Federal Circuit. As the Court is aware, the terms of all of the

Standard Contracts were promulgated in the same manner through notice-and-comment rulemaking, and the interactions between DOE and the nuclear industry as a whole, including its representative industry organizations, led to the promulgation of the contract. As a result, any rulings by the Federal Circuit about the availability of a defense based upon the "Unavoidable Delays" clause of the Standard Contract (as well as the contours of such a defense) will assist in determining whether (and how) such a defense can be raised in this case. See Restatement (Second) of Contracts § 211 (1981) (standardized contracts are to be interpreted and applied in same manner for all contract parties, regardless of individual contract holder's understanding or knowledge). Now that the Nebraska Public Power appeal has been argued before the Federal Circuit, we expect to receive shortly guidance from the Federal Circuit concerning the availability of the Unavoidable Delays clause as a contractual defense to liability in all SNF cases generally and, in particular, in this litigation involving Detroit Edison. Accordingly, deferring the Court's consideration of Detroit Edison's summary judgment motion will allow the Federal Circuit to more fully develop the contours of the SNF cases generally, and is anticipated to have a direct effect upon the resolution of this case.

2. Absent A Deferral, The Government Will Incur Substantial Hardship

Fundamental fairness demands consistency in the resolution of cases with the same operative facts. See Restatement (Second) of Contracts § 211 (1981). Without a deferral, there is a substantial risk that there will be inconsistent rulings relating to the availability of the Unavoidable Delays clause in the Standard Contract as a defense to liability arising from DOE's delay in SNF acceptance and that the parties will incur unnecessary expenses litigating this case in a manner that is inconsistent with the Federal Circuit's final decision in Nebraska Public

Power. Respect for the sanctity of the appeals process and for the scarcity of judicial resources compels the conclusion that the Court should defer ruling upon Detroit Edison's motion for summary judgment until the Federal Circuit determines whether the Court's prior ruling in Nebraska Public Power properly determined that the D.C. Circuit's writ of mandamus precluding the Government from invoking the Unavoidable Delays provision of the Standard Contract was indeed void ab initio.

3. The Requested Deferral Is Of A Reasonable Duration

We do not presume to estimate the length of time that the Federal Circuit will need to decide the Nebraska Public Power case that was submitted for decision on December 3, 2007. However, because we seek only to defer the Court's consideration of Detroit's summary judgment motion on liability, rather than a stay of all proceedings in this case, it is reasonable for the Court to grant our motion for this modest request for a deferral.

The Court's resolution of Detroit Edison's pending motion for summary judgment is not necessary at this time to allow the parties to conduct discovery, exchange Rule 26 initial disclosures, and otherwise proceed with this litigation in accordance with the Court's April 4, 2008 scheduling order, as all of the plaintiffs' discovery on that particular issue has been fully developed. As for the Government's discovery, one of our requests in our response to Detroit Edison's liability motion was that we be permitted to take sufficient discovery regarding Detroit Edison's understandings of the contract requirements before the Court decides that motion. See Def. Resp., dated July 28, 2004, at 22.

On April 8, 2008, counsel for the Government served its first request for the production of document upon plaintiff's counsel in which we seek information relating to the parties'

contract formation as well the supporting documentation relating to the costs for which Detroit Edison seeks recovery from the United States, including any construction project documents, overhead costs, and internal labor documents.[3] Upon receiving these documents as well as the information contained in Detroit Edison's Rule 26 disclosures, the Government will be prepared to begin conducting fact depositions and otherwise to begin auditing Detroit Edison's damages claim. Thus, by waiting a relatively short period of time to receive guidance from the Federal Circuit in Nebraska Public Power before resolving Detroit Edison's pending summary judgment motion on liability, the Court would not impede the parties' efforts to press forward with this litigation.

CONCLUSION

For these reasons, we respectfully request that the Court enter an order granting this motion to defer consideration of Detroit Edison's motion for summary judgment on liability until the Federal Circuit issues its opinion in the Nebraska Public Power appeal.

[3] Further, in response to discovery requests propounded during the course of the SNF litigation, the United States already has produced millions of pages of documents relating to the Standard Contract and DOE's administration of the SNF program upon the Government's document production website, which is available to all SNF plaintiffs, including Detroit Edison.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Acting Assistant Attorney General

JEANNE E. DAVIDSON
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Patrick B. Bryan
PATRICK B. BRYAN
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
Attn: Classification Unit, 8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 616-8299
Fax: (202) 305-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

April 18, 2008

CERTIFICATE OF FILING

I certify that on this the 18th day of April, 2008, a copy of the foregoing "DEFENDANT'S MOTION TO DEFER THE COURT'S CONSIDERATION OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY," was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Patrick B. Bryan